
NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

FILED

JUL -9 2019

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:                                    )   Case No. 15-29573-B-13
                                          )
SAUNDRA BATTAGLIA,                        )   Adversary No. 17-2091
                                          )
                                          )   DC No. BMV-9
                        Debtor(s).        )
                                          )
_____        )
                                          )
SAUNDRA BATTAGLIA,                        )
                                          )
                                          )
            Plaintiff(s),                 )
                                          )
v.                                        )
                                          )
THE BANK OF NEW YORK MELLON fka           )
THE BANK OF NEW YORK AS TRUSTEE           )
FOR THE CERTIFICATE HOLDERS OF            )
THE CWABS, INC., ASSET-BACKED             )
CERTIFICATES, SERIES 2005-3,              )
and SELECT PORTFOLIO SERVICING,           )
INC.,                                     )
                                          )
                                          )
                        Defendant(s).     )
_____        )

**MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT ON THE FIRST, SECOND, AND FOURTH CAUSES OF ACTION**

The court has before it a Motion for Summary Judgment or, in
the Alternative, Partial Summary Judgment filed by defendants The
Bank of New York Mellon FKA the Bank of New York as Trustee for
the Certificate Holders of the CWABS, Inc., Asset-Backed
Certificates, Series 2005-3, and Select Portfolio Services, Inc.[1]
Adv. Dkts. 222-229. Defendants move for summary judgment on the
first, second, and fourth causes of action remaining in the

_____

[1]Bank of America, N.A., was also initially named as a
defendant. It was dismissed on December 11, 2017. Adv. Dkts.
60, 63.

second amended complaint.[2]  Alternatively, defendants request
partial summary judgment on the punitive damage claim also
alleged in the second amended complaint.  Plaintiff Saundra
Battaglia has filed an opposition to the motion.  Adv. Dkts. 235-
245.  Defendants filed a reply.  Adv. Dkts. 251-252.

     The court takes judicial notice of the docket in this
adversary proceeding and in the parent Chapter 13 case.  See Fed.
R. Evid. 201.  Defendants have also filed a Request for Judicial
Notice.  Adv. Dkt. 226.  So too has plaintiff.  Adv. Dkt. 236.
Defendants object to plaintiff's request for judicial notice.
Adv. Dkt. 254.  Plaintiff objects to two documents included in
defendants' request for judicial notice.  Adv. Dkt. 226.  The
parties' objections are addressed below.

     The motion was heard on July 9, 2019.  Appearances were
noted on the record.

     The court has reviewed and considered the motion,
opposition, reply, and all related declarations and exhibits.
The court has also heard and considered the arguments and
statements of counsel made on the record in open court.  Findings
of fact and conclusions of law are set forth below.  See Fed. R.
Civ. P. 52(a); Fed. R. Bankr. P. 7052.


**Introduction**

     This is an action by plaintiff against defendants for
alleged willful violation(s) of the automatic stay of 11 U.S.C. §

---

     [2]The third cause of action was dismissed with prejudice by
an order entered on May 23, 2018.  Adv. Dkts. 132, 134.
Plaintiff did not appeal that dismissal.

362(a), damages, including punitive damages, under § 362(k)(1), and for alleged unfair business practices under California Business & Professions Code § 17200. Plaintiff contends that defendants willfully violated the automatic stay by conducting a nonjudicial foreclosure sale of her residence at 15935 D Street, Meridian, California ("Property"), after she filed a petition for relief under Chapter 13 of the Bankruptcy Code and despite knowing that a bankruptcy petition was filed. Plaintiff also accuses defendants of engaging in deceitful conduct.

Defendants do not dispute they foreclosed on the Property postpetition. Defendants also do not dispute they were aware of plaintiff's bankruptcy case when they foreclosed on the Property. Defendants assert that plaintiff had no interest in the Property when she filed her bankruptcy petition and so plaintiff had no interest in the Property that became property of the estate protected by the automatic stay when she filed her bankruptcy petition. Under those circumstances, defendants assert that the postpetition foreclosure was not (and could not have been) an act or attempt to obtain, possess, exercise control over, or enforce a lien against property of the estate in violation of § 362(a).

For the reasons explained below, the court agrees with defendants and therefore will grant defendants' motion for summary judgment. Judgment on all remaining causes of action in the second amended complaint will be entered for defendants and against plaintiff. Defendants' alternative request for summary judgment on the punitive damage claim will be denied as moot.

- 3 -

Procedural Background

    Plaintiff filed the complaint that initiated this adversary proceeding on May 30, 2017. Adv. Dkt. 1. That initial complaint alleged two causes of action- both under § 362. *Id.* The complaint was served on defendants on July 5, 2017. Adv. Dkt. 9.

    Defendants moved to dismiss the initial complaint on July 14, 2017. Adv. Dkts. 14-18. More precisely, defendants moved to dismiss the complaint "pursuant to Federal Rule of Civil Procedure 12(b)(6), without leave to amend[,]" Adv. Dkt. 16 at 1:16, and "with prejudice." *Id.* at 6:15. The court denied defendants' motion to dismiss in an order entered on August 18, 2017. Adv. Dkt. 29.

    Plaintiff thereafter filed a first amended complaint on September 29, 2017. Adv. Dkt. 34. In addition to the two original § 362 causes of action, the first amended complaint alleged a state law intentional misrepresentation claim in the third cause of action and an unfair business practices claim in the fourth cause of action. *Id.* Defendants were served with the first amended complaint on October 2, 2017. Adv. Dkt. 38.

    Defendants moved to dismiss the first amended complaint on October 30, 2017. Adv. Dkt. 40. As to all causes of action alleged in the first amended complaint, non-core state law claims included, defendants moved to dismiss "pursuant to Federal Rule of Civil Procedure 12(b)(6), without leave to amend[,]" Adv. Dkt. 42:22-23, and requested that "the Court dismiss Plaintiff's Amended Adversary Complaint, with prejudice." *Id.* at 20:6-7.

    On December 21, 2017, the court entered an order granting in part and denying in part defendants' motion to dismiss the first

amended complaint.  Adv. Dkt. 75.  The motion was granted with
leave to amend the intentional misrepresentation claim alleged in
the third cause of action, denied as to the automatic stay
violation claims alleged in the first and second causes of
action, and denied as to the unfair business practice claim
alleged in the fourth cause of action.  Id.

The court granted plaintiff leave to file a second amended
complaint by December 29, 2017, as to the dismissed intentional
misrepresentation claim.  Id.  Plaintiff filed the second amended
complaint on December 29, 2017, Adv. Dkt. 77, and defendants were
served with it on January 3, 2018.  Adv. Dkt. 80.  The second
amended complaint re-alleged the same four causes of action that
were alleged in the first amended complaint.

Meanwhile, on January 3, 2018, defendants filed a Notice of
Non-Consent To Final Orders which states as follows:

> Defendants, THE BANK OF NEW YORK MELLON FKA THE BANK OF
> NEW YORK AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF THE
> CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2005-3
> and SELECT PORTFOLIO SERVICING, INC., hereby provide
> notice that they respectfully do not consent to entry
> of final orders by the Court in (a) any non-core
> proceedings, or (b) core proceedings, to the extent it
> is determined that the Court, absent consent of the
> parties, cannot enter final orders or judgments
> consistent with Article III of the United States
> Constitution.

Adv. Dkt. 79 at 2:1-7.  The court deferred ruling on defendants'
notice until the time of trial.  Adv. Dkts. 133, 135.

The following day, January 4, 2018, defendants filed a
notice of appeal and a motion for leave to appeal with the Ninth
Circuit bankruptcy appellate panel.  Adv. Dkts. 83-90, 101.  The
bankruptcy appellate panel denied leave and dismissed defendants'
interlocutory appeal on March 15, 2018.  Adv. Dkt. 111.

Then again, on April 24, 2018, defendants moved to dismiss the intentional misrepresentation claim alleged in the third cause of action of the second amended complaint with the suggestion that dismissal be with prejudice and without leave to amend. Adv. Dkt. 119 at 4:18-21. The court heard the motion to dismiss on May 22, 2018, granted it on the basis that plaintiff could not establish the reliance element of the intentional misrepresentation claim, and dismissed the intentional misrepresentation claim with prejudice in an order filed on May 23, 2018. Adv. Dkt. 134. Defendants answered the second amended complaint, the operative complaint in this adversary proceeding, on May 29, 2018. Adv. Dkt. 136.

**Undisputed Facts**

In March of 2004, plaintiff and her then husband, Kevin Heimburger ("Mr. Heimburger"), acquired a fee interest in the Property, Adv. Dkt. 226, Ex. 1 at ¶ 7, which they held as joint tenants. Id., Ex. 2 at Ex. A.

In August of 2004, plaintiff obtained a $30,000.00 loan from John Roth ("Mr. Roth") and signed a deed of trust which, without condition, restriction, or limitation, granted Mr. Roth her interest in the Property as security for the loan ("DOT 1"). Adv. Dkt. 226, Ex. 1 at ¶ 8; Id., Ex. 2 at Ex. B; see also Adv. Dkt. 238 at ¶¶ 1, 14, 27.

In January of 2005, plaintiff and Mr. Heimburger obtained a $318,750.00 loan from Countrywide Home Loans and, in connection with that loan, signed a deed of trust which granted MERS as Countrywide's nominee an interest in Mr. Heimburger's legal

- 6 -

interest in the Property ("DOT 2"). Adv. Dkt. 226, Ex. 1 at ¶ 9 (document authentication); Id., Ex. 2 at Ex. C ("Borrower understands and agrees that [the beneficiary] holds only legal title to the interest granted by Borrower in this Security Instrument[.]"); see also Adv. Dkt. 238 at ¶¶ 2, 15, 28.

Plaintiff and Mr. Heimburger eventually divorced and, in the course of their divorce proceeding, they entered into a January 2010 court-approved Marital Settlement Agreement ("MSA"). Adv. Dkt. 226, Ex. 1 at ¶ 10; Id., Ex. 2 at Ex. D; see also Adv. Dkt. 238 at ¶¶ 6-7, 19-20, 32-33. The MSA granted plaintiff the Property as her sole and separate property. Adv. Dkt. 226, Ex. 1 at ¶ 11; Id., Ex. 2 at Ex. D. The MSA was never recorded. Adv. Dkt. 238 at ¶ 7; see also Adv. Dkt. 238 at 3, ¶¶ 6-7, 19-20, 32-33.

Meanwhile, in July of 2011, DOT 2 and the corresponding promissory note were transferred and assigned to defendants. Adv. Dkt. 226, Ex. 1 at ¶ 12; Id., Ex. 2 at Ex. E; see also Adv. Dkt. 238 at 2, ¶ 4, 17, 30.

Mr. Roth conducted a nonjudicial foreclose sale under DOT 1 on or about September 6, 2011, and a trustee's deed was thereafter recorded on or about September 13, 2011. Adv. Dkt. 226, Ex. 1 at ¶ 13; Id., Ex. 2 at Ex. F; see also Adv. Dkt. 238 at ¶¶ 5, 18, 31. That foreclosure extinguished plaintiff's interest in the Property and vested it in Mr. Roth. Adv. Dkt. 226, Ex. 1 at ¶ 13. A little over a week later, on September 22, 2011, Mr. Heimburger quitclaimed whatever interest he then held in the Property to Mr. Roth. Id., Ex. 1 at ¶ 14; Ex. 2 at Ex. G.

Over four years later, on December 11, 2015, plaintiff filed

a petition for relief under Chapter 13 of the Bankruptcy Code. Adv. Dkt. 226, Ex. 1 at ¶ 37; Id., Ex. 2 at Ex. X; see also Adv. Dkt. 238 at ¶¶ 8, 21, 34.  Although plaintiff notified defendants of her bankruptcy filing after she filed and before December 14, 2015, Adv. Dkt. 226, Ex. 1 at ¶ 38; Id., Ex. 2 at Ex. W, defendants nevertheless foreclosed on DOT 2 on December 14, 2015. Adv. Dkt. 226, Ex. 1 at ¶ 38; Id., Ex. 2 at Ex. X; see also Adv. Dkt. 238 at ¶¶ 9, 22, 35.  A trustee's deed was recorded on December 22, 2015.  Adv. Dkt. 226, Ex. 1 at ¶ 41; Id., Ex. 2 at Ex. X; see also Ex. 238 at ¶¶ 10, 23, 36.  Mr. Roth subsequently conveyed his interest in the Property to defendants in a grant deed recorded on December 30, 2015.  Adv. Dkt. 226 at Ex 3.

Plaintiff's bankruptcy case was dismissed on May 11, 2016. Adv. Dkt. 226, Ex. 1 at ¶ 46; Bankr. Dkt. 52; see also Adv. Dkt. 238 at ¶¶ 11, 24, 37.  Six months later, on November 9, 2019, defendants initiated unlawful detainer proceedings to recover possession of the Property.  Adv. Dkt. 226, Ex. 1 at ¶ 48; Id., Ex. 2 at Ex. Z; see also Adv. Dkt. 238 at ¶¶ 12, 25, 38. However, at all times, plaintiff has remained in possession of and continued to reside on the Property.  Adv. Dkt. 226, Ex. 1 at ¶ 18; see also Adv. Dkt. 238 at ¶¶ 13, 26, 39.  Indeed, although plaintiff has continued to reside on the Property at all relevant times, she has only paid rent in the amount of $900.00 per month to Mr. Roth in cash payments for several months in 2013-2014. Adv. Dkt. 226, Ex. 1 at ¶ 18.

**Venue, Jurisdiction, and Consent**

Venue is proper under 28 U.S.C. § 1409.

Federal subject matter jurisdiction is founded on 28 U.S.C. § 1334. This adversary proceeding involves core claims under 28 U.S.C. §§ 157(b)(2)(A), (G), and (O), as well as a non-core claim under California state law.

Plaintiff consents to the entry of final orders and judgment by a bankruptcy judge under 28 U.S.C. § 157(c)(2). Adv. Dkt. 77 at 2:14-16. Defendants concede that consent is not necessary for a bankruptcy judge to enter a final judgment on the core § 362 automatic stay claims alleged in the first and second causes of action and, therefore, their earlier non-consent applies only to the remaining non-core state law claim alleged in the fourth cause of action. Adv. Dkt. 131 (audio at 21:08-22:30). Although the court reserved that issue for trial, given the disposition below, the court now concludes that defendants have impliedly consented to the entry of a final judgment by a bankruptcy judge on the non-core state law claim alleged in the fourth cause of action. See 28 U.S.C. 157(c)(2).

Bankruptcy proceedings fall into three categories, those: (i) that arise under Title 11; (ii) that arise in a Title 11 case; and (iii) that are "related to" a Title 11 proceeding. Stern v. Marshall, 564 U.S. 462, 473 (2011). Cases in the former two categories are known as "core" proceedings, while cases that are only related to a Title 11 proceeding are "non-core." See Id. at 473-475; 28 U.S.C. § 157(b). District courts may refer any bankruptcy proceeding, whether core or non-core, to the bankruptcy court. 28 U.S.C. § 157(a); Id. at 474.

- 9 -

Generally, a bankruptcy judge may hear and enter a final judgment in a core proceeding, but in a non-core proceeding, may only submit proposed findings of fact and conclusions of law to the district court which then enters final judgment. Id. at 474-75; 28 U.S.C. § 157(c)(1). A bankruptcy judge may, however, "with the consent of all the parties to the proceeding, ... hear and determine and ... enter appropriate orders and judgments ...." 28 U.S.C. § 157(c)(2); Executive Benefits Ins. Agency v. Arkison, 573 U.S. 25, 38 (2014).

In Wellness Int'l Network, Ltd. v. Sharif, 135 S.Ct. 1932 (2015), the Supreme Court addressed the question whether parties can consent to adjudication and the entry of final orders and judgment by the bankruptcy court of traditional non-core claims. Id. at 1939. The Supreme Court answered the question in the affirmative. Id. at 1944-45. More importantly, the Wellness court clarified that neither the United States Constitution nor 28 U.S.C. § 157 mandate that a party expressly consent to bankruptcy court adjudication. Id. at 1947. "The implied consent standard ... supplies the appropriate rule for adjudications by bankruptcy courts under § 157." Id. at 1948. "[T]he key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." Id. (internal quotation and citation omitted); see also Executive Benefits Ins. Agency v. Arkinson (In re Bellingham Ins. Agency, Inc.), 702 F.3d. 553, 567 (9th Cir. 2012) (discussing party's implied consent to permit a bankruptcy judge "to decide finally").

- 10 -

The intentional misrepresentation claim that was alleged in the third cause of action was previously dismissed with prejudice and without leave to amend.[3]  Adv. Dkts. 132, 134.  That dismissal was not appealed.  That leaves the unfair business practices claim in the fourth cause of action as the only remaining state law non-core claim alleged in the second amended complaint and, thus, the only claim for which defendants previously acknowledged consent is needed.

The Supreme Court in <u>Wellness</u> observed that the determination of whether a party has in fact consented to bankruptcy court jurisdiction on a non-core claim may "require a deeply fact bound analysis of the procedural history" of a particular case.  <u>Wellness</u>, 135 S.Ct. at 1949.  A fact bound analysis of the procedural history of this case implicates the defendants' implied consent to the entry by this court of a final judgment on the fourth cause of action.

Defendants asked the court to dismiss plaintiff's state law claims "with prejudice" on multiple occasions.  Defendants' request for a "with prejudice" dismissal is tantamount to a request for the court to enter a final judgment on the merits of the non-core claims.  <u>Marin v. HEW, Health Care Financing Agency</u>, 769 F.2d 590, 594 (9th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1061

---

[3]The court has the authority to issue final orders on pretrial matters that do not involve factual findings.  <u>Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)</u>, 504 F.3d 775, 787–88 (9th Cir. 2007).  That includes a claim-dispositive motion to dismiss.  <u>In re AWTR Liquidation, Inc.</u>, 547 B.R. 831, 839 (Bankr. C.D. Cal. 2016) (citing <u>PDG Los Arcos, LLC v. Adams</u>, 436 Fed. Appx. 739, 743 (9th Cir. 2011)).

(1986); see also 9 Wright & Miller § 2373, at 396, n. 4 ("[W]ith

prejudice is an acceptable form of shorthand for an adjudication

upon the merits.") (internal quotations omitted). For some

courts, that is enough to trigger implied consent. In re Jordan,

543 B.R. 878, 882 (Bankr. C.D. Ill. 2016) (finding implied

consent where defendant moved to dismiss and asked the bankruptcy

court "to enter a final order of dismissal."). But even more

compelling here is that defendants have now explicitly and

unconditionally asked the court to grant summary judgment and

thereby enter a final judgment on the remaining non-core claim

alleged in the fourth cause of action. See Adv. Dkt. 224 at 11.

In this court's view, defendants' request for summary judgment

after withholding consent is enough to warrant a finding of

implied consent to the entry of a final judgment by the

bankruptcy court on the remaining state law non-core claim

alleged in the fourth cause of action. See 11 U.S.C. §

157(c)(2); True Traditions, LC v. Wu, 552 B.R. 826, 839 (N.D.

Cal. 2015) (request for entry of final judgment on summary

judgment motion is implied consent; see also Haley v. Barlays

Bank Del. (In re Carter), 506 B.R. 83, 88 (Bankr. D. Ariz. 2014)

(finding that a summary judgment movant waived its Stern

objection to the court's constitutional authority and commenting

that "it is difficult to understand how both the objection to

final judgment and the request for entry of final judgment could

have been filed in compliance with Rule 9011(b).").

Based on the foregoing, the court concludes it has full

constitutional and statutory authority to hear and determine the

defendants' summary judgment motion and to enter a final judgment

on all claims alleged in the second amended complaint, the non-core state law claim in the fourth cause of action included.

**Requests for Judicial Notice**

Plaintiff and defendants have both filed requests for judicial notice.

Defendants request judicial notice of allegations in plaintiff's second amended complaint, exhibits submitted with the second amended complaint, and a recorded grant deed pursuant to which Mr. Roth conveyed his interest in the Property to defendants. Adv. Dkt. 226.

Plaintiff makes limited objections to defendants' request for judicial notice. Plaintiff objects only to judicial notice of the allegation in the second amended complaint that references DOT 2 and also objects to the DOT 2 exhibit attached to the second amended complaint on the basis it lacks foundation. Adv. Dkt. 238 at ¶¶ 3, 16, 29, 42. Plaintiff also objects to judicial notice of the allegation in the second amended complaint that defendants conducted a nonjudicial foreclosure sale on December 14, 2015, and the trustee's deed from that nonjudicial foreclosure sale. Id., at ¶¶ 9, 22, 35, 49. For the reasons explained below, plaintiff's objections are OVERRULED and defendants' request for judicial notice is GRANTED.

The court initially notes that an opposing party's pleadings are admissible and can serve as a basis for summary judgment. Prepaid Teleconnect, Inc. v. City of Murrieta, 2016 WL 1622609, *3 (E.D. Cal. 2016) ("A statement in an opposing party's pleadings qualifies as an admission, rendering it admissible for

purposes of summary judgment."); see also Lockwood v. Wolf Corp.,
629 F.2d 603, 611 (9th Cir. 1980).[4]  As to DOT 2 on which
defendants rely for their motion, it is the same document that
plaintiff attached as an exhibit to the second amended complaint
and which plaintiff states in the second amended complaint is a
true and correct copy.  Adv. Dkt. 78 at Ex. C.  Thus, not only is
judicial notice of matters on the court's docket appropriate,
United States v. Wilson, 631 F.2d 118, 119-20 (9th Cir. 1980),
but plaintiff has already authenticated the document to which she
now objects to the court taking judicial notice of.  In any case,
the court will take judicial notice of Exhibits 1, 2, and 3
attached to Adv. Dkt. 226.

Plaintiff requests that the court take judicial notice of
pleadings in what appears to be related litigation involving
defendants before the Sutter County Superior Court.  Adv. Dkt.
236.  Defendants object to plaintiff's request to the extent it
is a request for the court to accept the truth of facts stated in
the pleadings.  For the reasons explained below, defendants'
objection is SUSTAINED IN PART and OVERRULED IN PART which means
plaintiff's request for judicial notice is GRANTED IN PART and

---

[4]In any event, defendants have sufficiently admitted
allegations in the second amended complaint relevant to the
disposition of the summary judgment motion.  Compare Adv. Dkts.
77 and 136 at ¶¶ 7-10, 12-15, 29, 30, 37-39, 41, 46-50; Adv.
Dkts. 238 and 254.  Judicial notice of undisputed facts within
the court's own records is appropriate.  Forte v. County of
Merced, 2013 WL 3282957, *2 (E.D. Cal. 2012) ("[A] court may take
judicial notice of undisputed facts contained in a public
document such as a court filing and may rely on those facts as if
they are true."); see also Teixeira v. County of Alameda, 873
F.3d 670, 676 n. 6 (9th Cir. 2017).

DENIED IN PART.

Judicial notice of documents and pleadings filed in related litigation is permissible. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, a court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation document but, rather, only to establish the fact of such litigation. San Luis v. Badgley, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000). Applying that standard here, the court will take judicial notice of the existence of the Sutter County Superior Court pleadings and proceedings. See Nelson v. Union Bank of Calif., N.A., 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003). However, the court does not take judicial notice of facts asserted in the Sutter County Superior Court pleadings.

**Applicable Legal Standard**

Federal Rule of Civil Procedure 56, applicable by Federal Rule of Bankruptcy Procedure 7056, permits the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056; see also Local Bankr. R. 7056-1.

A motion for summary judgment calls for a "threshold inquiry" into whether a trial is necessary, that is, whether "any genuine factual issues . . . properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The court does not weigh evidence or assess

credibility; rather, it determines which facts the parties do not
dispute, then draws all inferences and views all evidence in the
light most favorable to the nonmoving party. See Id. at 255;
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587–88 (1986). "Where the record taken as a whole could not lead
a rational trier of fact to find for the non-moving party, there
is no 'genuine issue for trial.'" Id. at 587.

The moving party bears the initial burden of "informing the
district court of the basis for its motion, and identifying those
portions of [the record] which it believes demonstrate the
absence of a genuine issue of material fact." Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986). As noted above, an opposing
party's pleadings are admissible for that purpose. Id. at 324;
Prepaid Teleconnect, 2016 WL 1622609 at *3; see also Lockwood,
629 F.2d at 611.

The non-moving party must, in response to a summary judgment
motion, "go beyond the pleadings" and "designate specific facts
showing that there is a genuine issue for trial." Celotex, 477
U.S. at 324 (quotation marks omitted). The non-moving party
"must do more than simply show that there is some metaphysical
doubt as to the material facts." Matsushita, 475 U.S. at 586.
"Only disputes over facts that might affect the outcome of the
suit under the governing law will properly preclude the entry of
summary judgment." Anderson, 477 U.S. at 248.


Discussion

A.    The First and Second Causes of Action

The commencement of a case in bankruptcy creates an

"estate," which contains all of the debtor's interests (whether legal or equitable) in property, tangible or intangible. 11 U.S.C. § 541(a); <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 203-05 (1983). The bankruptcy estate - and property of it - is protected by an automatic stay of actions by all entities to collect or recover on claims and with regard to property of the estate. <u>See</u> 11 U.S.C. §§ 541(a) & 362(a).

However, interests that a debtor does not hold at the commencement of the bankruptcy case do not pass to the estate, and such interests are not subject to the automatic stay. "Section 362(a) only stays actions against the debtor, property of the debtor or property of the bankruptcy estate. The stay does not apply to property in which the debtor's interest was completely extinguished before the case was filed." Rutter, Cal. Prac. Guide Bankruptcy § 8:790, Exceptions to Automatic Stay (citation omitted). Unfortunately for the plaintiff, these are the circumstances in which she finds herself in this adversary proceeding.

We begin with DOT 1. When plaintiff executed DOT 1 she conveyed the entirety of her legal interest in the Property as security for the loan from Mr. Roth. <u>See</u> <u>Bank of Italy Nat'l Tr. & Sav. Ass'n v. Bentley</u>, 217 Cal. 644, 655-56 (1933) (explaining conveyance of legal title or interest as security under deed of trust); <u>Davidow v. Corp. of Am.</u>, 16 Cal.App.2d 6, 11-12 (1936) (accord). Plaintiff and Mr. Heimburger then signed DOT 2. Consistent with <u>Bank of Italy</u> and <u>Davidow</u>, *supra*, DOT 2 states that MERS as Countrywide's nominee holds legal title as security for Countrywide's loan to plaintiff and Mr. Heimburger. For

- 17 -

purposes relevant here, that included Mr. Heimburger's legal interest in the Property which was not encumbered by DOT 1.

By 2005 then, plaintiff's legal interest in the Property is encumbered by Mr. Roth's lien under DOT 1, and Mr. Heimburger's legal interest in the Property is encumbered by Countrywide's lien under DOT 2. Plaintiff and Mr. Heimburger retained whatever equitable interests in the Property they each held at the time.

Fast forward to 2010. Plaintiff and Mr. Heimburger are divorced and, in the course of their divorce proceeding, they entered into the state-court approved MSA. The MSA granted plaintiff the Property as her sole and separate property. The MSA was never recorded. Nevertheless, the unrecorded MSA has the status of an unrecorded grant of an interest in property from Mr. Heimburger to the plaintiff. See California Family Code § 1502(b) ("Recording or nonrecording of a premarital agreement or other marital property agreement has the same effect as recording or nonrecording of a grant of real property.").

Plaintiff conceded during oral argument that the interests in the Property that she now claims were affected by the defendants' postpetition foreclosure were interests she acquired from Mr. Heimburger under the MSA. Plaintiff's opposition confirms this, page 7 of which states as follows:

> The Complaint alleges that Ms. Battaglia had an interest in 15935 D Street Meridian, CA via her unrecorded Marital Settlement Agreement that became part of the bankruptcy estate. The foreclosure sale affected Ms. Battaglia's interest in the property and was an attempt to enforce a lien against her, which she had obtained from Kevin Heimburger in their divorce.

Dkt. 235 at 7:9-13.

When pressed as to the precise interests that plaintiff

1  acquired from Mr. Heimburger under the MSA and that are issue in
2  this adversary proceeding, plaintiff identified two: (i) the
3  right to obtain legal title to the Property from Mr. Heimburger
4  and (ii) the right to live on the Property.  Again, this is
5  consistent with plaintiff's opposition which states that
6  defendants "nonjudicial foreclosure sale affected Ms[sic}
7  Battaglia's right to obtain title from Kevin Heimburger that she
8  was entitled too and disturbed her peace in her home."  Dkt. 235
9  at 7:18-19.  As plaintiff correctly noted during oral argument,
10 the right to obtain title is an equitable interest in property.
11 See Rosenthal v. Landau, 90 Cal.App.2d 310, 312-13 (1949).  The
12 latter right may appropriately be characterized as a possessory
13 interest that remains with the trustor even after title passes as
14 security under a deed of trust.  See Bank of Italy, 217 Cal. at
15 656-57 ("The legal estate thus left in the trustor or his
16 successors entitles them to the possession of the property until
17 their rights have been fully divested by a conveyance made by the
18 trustees in the lawful execution of their trust, and entitles
19 them to exercise all the ordinary incidents of ownership in
20 regard to the property, subject always, of course, to the
21 execution of the trust.").

22      To the extent the aforementioned rights plaintiff states she
23 acquired from Mr. Heimburger under the MSA are unrecorded
24 property interests, by operation of California law they passed
25 from plaintiff to the DOT 1 trustee as additional security for
26 Mr. Roth's benefit under DOT 1.  California Civil Code § 2930
27 states that "[t]itle acquired by the mortgagor subsequent to the
28 execution of the mortgage, inures to the mortgagee as security

- 19 -

for the debt in like manner as if acquired before the execution."

As explained in <u>Perego v. Seltzer</u>, 260 Cal.App.2d 825 (1968):

> This code section is fully applicable to trust deeds
> (<u>Barberi v. Rothchild</u>, 7 Cal.2d 537 [61 P.2d 760]), and
> it is well settled that a trust deed creates a valid
> lien on real property to secure a debt for which it is
> executed, even though the trustor has no title to the
> property at the time of the execution of the
> instrument, provided he subsequently acquires title
> thereto during the life of the deed of trust.  Title to
> real property acquired after it is mortgaged is deemed
> to be covered by the lien on the theory that the
> mortgagor is estopped from denying title under such
> circumstances. (<u>California Bank v. Bell</u>, 38 Cal.App.2d
> 533 [101 P.2d 724]; Civ. Code, § 2930; 17 Cal.Jur., §
> 142, p.854; 58 A.L.R. 391, note; <u>Orr v. Stewart</u>, 67
> Cal. 275 [7 P. 693]; <u>Schelling v. Thomas</u>, 96 Cal.App.
> 682, 688 [274 P. 755].)

<u>Id.</u> at 828-29.

Although § 2930 is an equitable doctrine of common law, <u>In re Wagabaza</u>, 582 B.R. 486, 496 (Bankr. C.D. Cal. 2018), it remains a fundamental and well-grounded principle codified in California law that must not be ignored so as to render it meaningless.  See <u>In re Southbay Expressway, L.P.</u>, 2010 WL 4393869, *4 (Bankr. S.D. Cal. 2010).  This is particularly true when, as here, plaintiff received the benefit of two loans totaling nearly $360,000.00 and does not assert any inequity arising from the MSA.

The same is also true even if the rights that plaintiff states she acquired from Mr. Heimburger under the MSA are equitable interests in the Property.  Although they transferred to plaintiff under the MSA they likewise passed to the DOT 1 trustee as additional security for Mr. Roth's benefit under DOT 1 by operation of California law.  California Civil Code § 1106 states that "[w]here a person purports by proper instrument to

- 20 -

grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors." The California Supreme Court has held that Civil Code § 1106 is applicable to deeds of trust except that the title or claim to it passes to the trustee as additional security rather than to the grantee. <u>Barberi</u>, 7 Cal. 2d at 540.

The point here is this: Although it is true that plaintiff acquired Mr. Heimburger's interest in the Property consisting of his right to obtain title and a possessory right through the MSA, it is equally true that by operation of California law those interests became additional security for Mr. Roth's benefit under DOT 1. So by January of 2010, in addition to plaintiff's legal interest in the Property, Mr. Roth's security under DOT 1 included the equitable and possessory rights that plaintiff received from Mr. Heimburger under the MSA.

Mr. Roth foreclosed on DOT 1 in September of 2011. That foreclosure extinguished the entirety of plaintiff's legal interest in the Property and any residual equitable interest associated with plaintiff's legal title. <u>Moeller v. Lien</u>, 25 Cal.App.4th 822, 834 (1994) (after foreclosure, trustor lacks legal or equitable right, title, or interest in property all of which vest in purchaser). Mr. Roth's foreclosure on DOT 1 also extinguished the equitable and possessory interests that plaintiff states she acquired from Mr. Heimburger under the MSA and which by operation of law transferred to the DOT 1 trustee as additional security for Mr. Roth's benefit under DOT 1. <u>Bank of Italy</u>, 217 Cal. at 656-57; <u>see also Perkins v. Chad Dev. Corp.</u>,

- 21 -

95 Cal.App.3d 645, 651 (1979) (holding that foreclosure extinguished any interest claimed in property, including equitable interest acquired after deed of trust was executed). Indeed, plaintiff concedes these points.  <u>See</u> Dkt. 226, Ex. 1 at ¶ 13 ("On September 13, 2011, John Roth, III obtained an interest in one half of the property by a Trustee's Deed Upon Sale[.]").

Effectively, then, Mr. Roth's foreclosure on DOT 1 gave Mr. Roth the entirety of plaintiff's interests in the Property which, at the time of his foreclosure, included the equitable right to Mr. Heimburger's title and the possessory right which plaintiff stated she received under the MSA.[5]  So by September 2011 all interests in the Property were held by non-debtors, *i.e.*, Mr. Roth following his foreclosure on DOT 1 and Mr. Heimburger whose legal title remained encumbered by defendants' lien under DOT 2. That means when plaintiff filed her bankruptcy petition over four years later on December 11, 2015, and when defendants foreclosed on DOT 2 three days after the petition was filed knowing that a bankruptcy case was filed, plaintiff had no interest in the Property that would (or could) have become property of the estate protected by the automatic stay.  That also means defendants' postpetiton foreclosure on DOT 2 did not (and could not) violate any provision of § 362(a), willfully or otherwise.[6]

_____

[5]That also means that when Mr. Heimburger purported to quitclaim his interest to Mr. Roth one week after Mr. Roth foreclosed on DOT 1 he really quitclaimed nothing.  At that point Mr. Heimburger no longer had anything left to quitclaim.

[6]Because the entirety of plaintiff's interest in the Property - interests received from Mr. Heimburger under the MSA included - was terminated prepetition by Mr. Roth's foreclosure

- 22 -

1    To reiterate, defendants' postpetition foreclosure did not

2  (and could not) implicate property of the estate and,

3  correspondingly, it did not (and could not) violate the automatic

4  stay of § 362(a).  Therefore, for the foregoing reasons, summary

5  judgment on the first and second causes of action alleged in the

6  second amended complaint will be granted for defendants and

7  against plaintiff.

8      B.   Fourth Cause of Action

9    The fourth cause of action purports to allege an unfair

10 business practices claim under California Business & Professions

11 Code § 17200.  The claim is premised on purported violations of §

12 362 and California Civil Code § 1709.

13   Because the court will grant summary judgment for defendants

14 on the first and second causes of action, there can be no claim

15 under California Business & Professions Code § 17200 premised on

16 a violation of § 362.  Defendants are therefore entitled to

17 judgment as a matter of law on that aspect of the claim alleged

18 in the fourth cause of action.

19   To the extent the intentional misrepresentation claim

20 previously alleged in the third cause of action was dismissed

---

22 on DOT 1, plaintiff's presence on the Property when she filed her
   bankruptcy petition and thereafter did not give rise to an

23 independent possessory interest protected by the automatic stay.
   See In Eden Place, LLC v. Perl (In re Perl), 811 F.3d 1120 (9th

24 Cir. 2016).  And in any case, defendants did not initiate state
   law unlawful detainer proceedings to recover possession of the

25 Property until six months after plaintiff's bankruptcy case was
   dismissed at which point there was no longer an estate or an

26 automatic stay.  Koo v. VNO Shops on the Lake (In re Koo), 2013

27 WL 5460138, *2 (9th Cir. BAP 2013).  Defendants also made no
   attempt to remove plaintiff from the Property during this

28 litigation.

- 23 -

with prejudice on the basis plaintiff is unable to establish the element of reliance necessary for the claim, the fourth cause of action similarly fails as a matter of law to the extent it is premised on California Civil Code § 1709. Section § 1709 states that "[o]ne who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Cal. Civ. Code § 1709. Like the intentional misrepresentation claim of the former third cause of action, § 1709 is grounded in fraud and therefore requires proof of reliance. Apumac, LLC v. Flint Hills Int'l, 2015 WL 13306128, *3 (C.D. Cal. 2015) (citing Lazar v. Superior Court, 12 Cal. 4th 631, 638 (Cal. 1996) and Cal. Civ. Code § 1709); Jones v. Wells Fargo Bank N.A., 2011 WL 13136503, *4 (C.D. Cal. 2011). Inasmuch as this aspect of the § 17200 claim requires proof of an element the court has already determined plaintiff is unable to establish in the context of fraud as a matter of law, this aspect of the fourth cause of action likewise fails as a matter of law.

In short, plaintiffs are entitled to judgment on the fourth cause of action as a matter of law. Therefore, consistent with the court's determination that defendants have consented to entry of a final judgment by a bankruptcy judge on the remaining non-core state-law claim, summary judgment will be granted for defendants and against plaintiff on the state law claim alleged under California Business & Professions Code § 17200 in the fourth cause of action.

- 24 -

**Conclusion**

    For all the foregoing reasons, defendants' motion for summary judgment is granted. Judgment will be entered for the defendants and against plaintiff on the first, second, and fourth causes of action remaining in the second amended complaint with plaintiff taking nothing on those claims. Defendants' alternative request for summary judgment on the punitive damage claim will be denied as moot.

    Provided a timely application is filed, defendants, as the prevailing parties, shall be awarded costs, other than attorney's fees. See Fed. R. Bankr. P. 7054(b)(1).

    To the extent there is a basis under applicable law, and consistent with Fed. R. Bankr. P. 9011, defendants may file a motion for attorney's fees under Fed. R. Bankr. P. 7054(b)(2) and Fed. R. Civ. P. 54(d).

    The continued hearing scheduled for July 16, 2019, at 9:30 a.m. will be vacated.

    A separate order granting defendants' motion for summary judgment and a separate judgment will issue.

    Dated: July 9, 2019.


UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Kimberly A. Harrison
604 10th Street
Sacramento CA 95814

Bryan L. Hawkins
500 Capitol Mall #1600
Sacramento CA 95814